J-A18044-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN THE INTEREST OF: N.B.R.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: N.B.R.H., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 274 WDA 2017 |

Appeal from the Order January 27, 2017
In the Court of Common Pleas of Westmoreland County
Juvenile Division at No(s): DP 12 of 2012

BEFORE: BOWES, LAZARUS and OTT, JJ.

MEMORANDUM BY OTT, J.: FILED OCTOBER 10, 2017

N.B.R.H., a minor ("Child"),[1] appeals from the order entered January 27, 2017, in the Court of Common Pleas of Westmoreland County, denying the motion for resumption of jurisdiction that was filed by Westmoreland County Children's Bureau (WCCB) on his behalf in this dependency matter.[2] N.B.R.H. contends: (1) The trial court erred and abused its discretion in denying his motion for resumption of jurisdiction; (2) The trial court erred and abused its discretion in denying his motion for resumption of jurisdiction when he met the criteria for eligibility under 42 Pa.C.S. § 6351(j) ("Resumption of jurisdiction"); (3) The trial court erred as a matter of law by applying 42

_____

[1] N.B.R.H. was 19 years of age at the time of the entry of the order under appeal.

[2] The Juvenile Law Center has filed a brief as amicus curie in support of N.B.R.H.'s appeal.

Pa.C.S. § 6351(a) ("Disposition of a dependent child", "General rule"); and (4) The trial court erred and abused its discretion in finding that resumption of jurisdiction was not "suited to the safety, protection and physical, mental and moral welfare of the child." See N.B.R.H.'s Brief, at 4. Based upon the following, we reverse the order of the trial court and remand to the trial court for further proceedings consistent with this memorandum.

The trial court, based upon the evidence received at the January 27, 2017, hearing on the motion for resumption of jurisdiction,[3] set forth the following findings of fact in its Pa.R.A.P. 1925(a) opinion:

> 1. While under the supervision of the Westmoreland County Children's Bureau (WCCB), the child, [N.B.R.H.] ("Child"), attended Penn State University-Altoona ("PSU-Altoona"). During the period of agency supervision, the Child was required to leave PSU-Altoona for disciplinary reasons.
>
> 2. Some time prior to December 14, 2016, the WCCB approved the Child's relocation to Alabama for the purpose of, and contingent upon, his attending either the University of Alabama ("UA") or the University of Alabama at Birmingham ("UAB").[1]
>
> _____
>
> [1] Throughout the record there appears to be confusion on the part of the WCCB regarding the distinction between UA and UAB.
>
> _____
>
> 3. The Child's stated reasons to the WCCB for requesting permission to move to Alabama were that "he wished to attend a university out of the state," and later, that it was his dream to attend the University of Alabama, main campus.

_____

[3] The trial court appointed counsel for N.B.R.H. for the hearing on the motion for resumption of jurisdiction. See Order, 1/17/2017.

4.     As part of his argument for permission to relocate to Alabama, the Child previously indicated that the UA was his "dream school," but after talking to people and "looking at it further" he realized it was the same as Penn State, causing him to apply instead to the UAB.

5.     At the Permanency Review Hearing on December 14, 2016 ("December 2016 PRH"), the WCCB requested that the Child be discharged from agency custody and that Court supervision be terminated because the Child was not attending the UAB, had failed to report to the WCCB that he was not attending the UAB, and the Child had failed or refused to provide the agency with proof that he otherwise met the requirements for continuing supervision.

6.     The Child was not attending the UAB because the university retracted his admission upon becoming aware that the Child had failed to report his previous withdrawal from PSU-Altoona for disciplinary reasons. The UAB deemed that the Child's failure to report his disciplinary withdrawal on his UAB application, despite the affirmative duty to do so, constituted a violation of the UAB's good character policy, and so retracted the Child's admission.

7.     The Child testified at the December 2016 PRH that he still planned to attend the UAB.

8.     By Order for Termination of Court Supervision dated December 14, 2016, the Court granted the agency's request for termination of supervision.

9.     The Child now claims to be enrolled at Jefferson State Community College (JSCC); however, because the WCCB does not have a current release for JSCC, the agency has been unable to confirm the Child's enrollment or actual attendance, which is merely presumed based upon the WCCB receiving a print-out of the Child's JSCC class schedule.

10.     At the Resumption Hearing, upon being confronted with the revocation of his admission to the UAB and his false statement on the application for admission, the Child obfuscated and refused to accept responsibility for his actions.

11. Not until the Resumption Hearing did the Child indicate that he may be leaving JSCC and intends to apply to and enroll at Samford University, a local four-year institution in Birmingham, Alabama. The Child only recently visited Samford University on January 20, 2017, seven days prior to the Resumption Hearing.

12. The Child has a girlfriend in Alabama, which may be a significant part of the reason he desires to return and remain in Alabama.

13. Based upon the distance and the consequent inability to effectively supervise the Child while in Alabama, the WCCB recommended against the resumption of supervision.

14. The WCCB believes it is unable to supervise the Child effectively when he is Alabama.

15. The only thing the WCCB can offer the Child while in Alabama is periodic phone contact and a $750 monthly stipend.

16. The WCCB recommended that the Child be permitted to re-enter agency custody if, and only if, he returns to Pennsylvania with the intent to remain.

17. The Child indicates that he does not intend to return from Alabama to Pennsylvania on a permanent basis.

18. If the Child returns to Alabama under agency supervision, the WCCB would be unable to provide the Child with medical insurance coverage.

19. If the Child returns to Alabama under agency supervision, there is no guarantee that Alabama authorities would agree to supervise the child, provide basic services, or provide medical insurance coverage.

20. The Child's testimony was not credible, and seemed more like an attempt to manipulate the system than an honest response to questions posed during direct and cross-examination.

Trial Court Opinion, 3/3/2017, at 1–3 (unnumbered) (record citations

omitted).

At the conclusion of the hearing, the trial court orally denied the motion

for resumption of jurisdiction. The trial court also entered a written order that

states, in relevant part:

> Dependency Jurisdiction was previously terminated on or after the Child's 18th birthday but before the Child turns 21 years of age.
>
> The Child currently meets the definition of "Child" as defined by The Juvenile Act at 42 Pa.C.S. § 6302 because the child is enrolled in an institution which provides post-secondary or vocational education.
>
> The Child currently meets the definition of "Child" as defined by [t]he Juvenile Act at 42 Pa.C.S. § 6302 because the child is employed for at least 80 hours per month.
>
> Child does not meet the criteria for resumption of dependency jurisdiction pursuant to Pennsylvania Rule of Juvenile Court Procedure 1635(C)(4), whereby this Court finds that to exercise jurisdiction pursuant to 42 Pa.C.S.A. § 6351(j) would not be best suited to the protection and physical, mental and moral welfare of the Child, where, if jurisdiction were exercised, the WCCB would be unable to properly or effectively supervise the Child while he pursues post-secondary education and employment outside of this Commonwealth in the [S]tate of Alabama.

Resumption of Jurisdiction Order, dated 1/27/2017, filed 2/1/2017. This

timely appeal followed.[4]

Our standard of review is well settled:

> The standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility

_____

[4] N.B.R.H., through counsel, timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement.

determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. We review for abuse of discretion.

In addition, we have observed:

In dependency proceedings our scope of review is broad. . . . Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate.

In the Interest of J.M., ___ A.3d ___, ___ [2017 PA Super 200] (Pa. Super. June 17, 2017) (citations omitted). With regard to questions of law, our standard of review is de novo. See id.

At the outset, we set forth the statutory provisions and Rule of Juvenile Court Procedure relevant to the issues raised in this appeal. Section 6351 of the Juvenile Act, titled "Disposition of dependent child," provides, in relevant part:

(a)    General Rule.—If the child is found to be a dependent child the court may make any of the following orders of disposition suited to the safety, protection and physical, mental and moral welfare of the child: ...

* * * *

(j)    Resumption of jurisdiction. --At any time prior to a child reaching 21 years of age, a child may request the court to resume dependency jurisdiction if:

(1) the child continues to meet the definition of "child" pursuant to section 6302; and

(2) dependency jurisdiction was terminated:

- 6 -

> ... (ii) on or after the child's 18th birthday, but before the child turns 21 years of age.

42 Pa.C.S. § 6351(a), (j). "Child" is defined in the Juvenile Act, in relevant part, as an individual who:

> (3) is under the age of 21 years and was adjudicated dependent before reaching the age of 18 years, who has requested the court to retain jurisdiction and who remains under the jurisdiction of the court as a dependent child because the court has determined that the child is:
>
> > (i) completing secondary education or an equivalent credential;
> >
> > (ii) enrolled in an institution which provides postsecondary or vocational education;
> >
> > (iii) participating in a program actively designed to promote or remove barriers to employment;
> >
> > (iv) employed for at least 80 hours per month; or
> >
> > (v) incapable of doing any of the activities described in subparagraph (i), (ii), (iii), or (iv) due to a medical or behavioral health condition, which is supported by regularly updated information in the permanency plan of the child.

42 Pa.C.S. § 6302 ("Child").

In addition, Pennsylvania Rule of Juvenile Court Procedure 1635, governing the hearing on the motion for resumption of jurisdiction states, in relevant part:

> C. Hearing. At the hearing, the court shall state its findings and conclusions of law on the record in open court as to whether:
>
> > (1) dependency jurisdiction was previously terminated:
> >
> > > (a) within ninety days prior to the child's eighteenth birthday; or

(b)  on or after the child's eighteenth birthday but before the child turns twenty-one years of age;  and

(2)  the child continues to meet the definition of child pursuant to 42 Pa.C.S. § 6302 because the child:

    (a)  is under twenty-one years of age;

    (b)  was adjudicated dependent prior to turning eighteen years of age;

    (c)  has requested the court to resume jurisdiction;  and

    (d)  is:

        (i)  completing secondary education or an equivalent credential;

        (ii) enrolled in an institution which provides postsecondary or vocational education;

        (iii) participating in a program actively designed to promote or remove barriers to employment;

        (iv) employed for at least 80 hours per month;  or

        (v) incapable of doing any of the activities described in subparagraph (i), (ii), (iii), or (iv) due to a medical or behavioral health condition, which is supported by regularly updated information in the permanency plan of the child.

* * * *

(4)  it will exercise jurisdiction pursuant to 42 Pa.C.S. § 6351(j) because it is best suited to the protection and physical, mental, and moral welfare of the child;

* * * *

D.  Orders.

(1) After a hearing, the court shall enter an order granting or denying the motion to resume juvenile court jurisdiction.

(2) If the court resumes jurisdiction, the court shall order:

- 8 -

> (a) that resumption of jurisdiction is best suited to the protection and physical, mental, and moral welfare of the child.

Pa.R.J.C.P. 1635(C)(1), (2), (4), (D)(1), (2)(a).

Before we consider the merits, we must address a jurisdictional issue. This court may raise issues of jurisdiction sua sponte. In re J.A., 107 A.3d 799, 809 n.11 (Pa. Super. 2015).

By its own terms, the Juvenile Act applies to children who are alleged to be dependent. Section 6303(a) of the Juvenile Act states, in relevant part:

> (a) General rule.—This chapter shall apply exclusively to the following:
>
> (1) Proceedings in which a child is alleged to be delinquent or dependent.

42 Pa.C.S. § 6303(a)(1). The definition of "Child" is set forth at 42 Pa.C.S. § 6302. Pursuant to Section 6351(j), at any time prior to a child reaching age 21, a child may request resumption of jurisdiction if, inter alia, the child continues to meet the definition of "Child" under Section 6302 of the Juvenile Act. See 42 Pa.C.S. § 6351(j)(1), supra.

Here, WCCB stipulated that N.B.R.H. met the definition of "Child" under Section 6302 on two grounds, namely, he was enrolled in college and was employed at least 80 hours per month. See 42 Pa.C.S. § 6302 ("Child", (3)(ii),(iv)). As more fully discussed below, the trial court erred in accepting these stipulations that affected the court's jurisdiction. Furthermore, the record reflects that WCCB entered into the stipulations based only on word of N.B.R.H., without any verification of the information provided by him. In this

regard, it is significant that the trial court found N.B.R.H. was not credible. See Trial Court Opinion, 3/3/2017, at 3 (unnumbered) (Finding of Fact #20).

At the hearing, prior to the presentation of testimony, Marla Blum, Esquire, representing WCCB, set out the position of the agency:

> MS. BLUM: Your Honor, just to refresh everybody's memory, we were here on December 14, 2016, for a Permanency Review Hearing. At that time we asked you to terminate court supervision of [N.B.R.H.] because the agency felt that they could not –
>
> THE COURT: I recall.
>
> MS. BLUM: -- the agency had consented to him going to Alabama for the purpose of attending the University of Alabama, and since he was no longer attending the University of Alabama, and we did not have any proof that he even met our requirements, we were asking that you terminate court supervision. You over his objection discharged him from care and terminated court supervision.
>
> In approximately two weeks after that hearing, he provided the agency with – strike that. At that time we already believed that he was enrolled to start Community College in Alabama around the middle of January, and two weeks after the hearing, he supplied the agency with proof that he was working at least 80 hours per month. Under the statute, we are required to file a motion for Resumption of Jurisdiction because he wanted to come back into care, and that is the reason why we are here today. We did file that motion. The allegations that he signed a verification to which is why we had to file the motion is that he is no longer [sic] enrolled in an institution which provides post-secondary or vocational education and he's employed for at least 80 hours per month, and he signed a verification to both of those.
>
> So we are here today just on the issue of whether or not you should allow – going to order resumption of jurisdiction. Just for everybody's notice right now, the agency's recommendation is that he only be allowed to come back into the custody of the agency if he becomes a permanent resident of Pennsylvania. So although we filed the petition because the law requires us to, I

just wanted to give everybody a heads up that was going to be our recommendation.

We are not disputing that he is employed for at least 80 hours per month, but it is still going to be the agency's recommendation. Then, of course, it's up to the Court. So he technically, I guess, meets the requirements for jurisdiction to be resumed, and we are going to hear testimony as to what he has done and what the recommendations are and why we are recommending what [] we are recommending.

N.T., 1/27/2017, at 3–5.

Tara Lorenzo, treatment caseworker for WCCB, testified on direct examination by Ms. Blum that N.B.R.H. "technically does meet the requirements of employment," and was "in community college" and had provided the agency with a class schedule. N.T., 1/27/2017, at 10. Furthermore, on cross examination by N.B.R.H.'s attorney, Ms. Lorenzo testified in the following exchange:

Q. You are aware of besides the records that you have that he is attending school, that he is working numerous jobs and that he is in an ROTC program there?

A. I am. He has reported to me that he is in a ROTC program. He has reported to me that he is currently working at one of his jobs while he attends school.

Q. Okay. Have you, I guess, besides the records, have you followed up on that to ensure that those are true?

A. He provided copies of the pay stubs so that is enough for me to observe that. I do not have a current release for Jefferson State Community College where I would be able to contact them to make sure that [N.B.R.H] was attending classes.

N.T., 1/27/2017, at 14.

The trial court further questioned Ms. Lorenzo, as follows:

BY THE COURT:

Q. Your pay stubs, does that indicate how many hours per week [N.B.R.H.]'s working?

A. I believe that it is. I don't have copies of those pay stubs in front of me. The independent living social worker has those.

THE COURT: Ms. Blum [WCCB's attorney], is that going to come in on some other testimony?

MS. BLUM: Your Honor, we were not going to call Ms. Fontana, but we will stipulate that these – actually, I haven't added up all of the hours. I mean, I am looking at one pay stub with 22 hours, one with 11-and-a half, one with 20, one with 10-and-a half so I don't know if it does. He also has another employer that shows a base pay of – looks like $750 but that was back in October. I guess we will have to hear from – we assume – he did tell us he was working at least 80 hours a month, and we took his word for that. I did [sic] go through and add up each one of the pay stubs if they do or they don't.

BY THE COURT:

Q. Did anybody else do that?

A. I know that whenever [N.B.R.H.] did come in to the [WCCB] to meet with myself and Ms. Lankey, he provided her with the pay stubs and she told me he had – he was meeting the eligibility guidelines.

MS. BLUM: We were satisfied, Your Honor, he was meeting that.

BY THE COURT:

Q. The second question relating to Jefferson State Community College. I think I initially heard that [N.B.R.H.] provided a schedule that I think under Cross-Examination I think I heard you say we do not have the [release] to determine if he's attending classes.

A. That is correct.

Q. So what does that mean. Do you have a schedule but you are not sure if he's attending?

A. Yes. Being that I am not in the State of Alabama, I can't physically go and see [N.B.R.H.] at the school to confirm that he is attending. He did provide us with that schedule.

Q. So does the schedule prove adequately that he's enrolled?

A. Yes. We had received back in November that he was enrolled. We had his acceptance. He had sent all of that to me upon receipt of that and then the schedule – it satisfied Ms. Lankey whenever –

Q. All right. So the agency is satisfied that he meets the requirements to be employed at least 80 hours per month, and the agency is also satisfied that he's enrolled in an institution that provides post-secondary education?

A. Yes. We are not disputing that he does not [sic] meet the requirement.

THE COURT: Okay.

N.T., 1/27/2017, at 22–24.

On further cross examination, Ms. Lorenzo testified:

Q. You mentioned you have communication with [N.B.R.H.] often. Would you say from your opinion that he's doing well?

A. From what [N.B.R.H.] has been reporting to me, he is reporting that he is working and that he is attending classes and that he is participating in ROTC. I can't visually see any of that, but that is what he is reporting to me.

N.T., 1/27/2017, at 25.

In addition, N.B.R.H. testified that he was "currently attending Jefferson State," and that he "would estimate 80 hours [of employment per month] would be close to it."  N.T., 1/27/2016, at 27, 29-30, 33.

At the conclusion of the hearing, the trial court entered its decision on the record:

> THE COURT:  Okay.  I note that the agency stipulates that technically he meets the requirements [referring to 42 Pa.C.S. § 6302].
>
> MS. BLUM [WCCB ATTORNEY]:  Correct, Your Honor.
>
> THE COURT:  That is to say he's either working the 80 hours per month or is enrolled, in fact, I think the agency stipulated to both.  You only need one so he certainly meets the technical requirements.  I also note the agency's recommendations that he not be approved to come back into supervision unless he comes back to Pennsylvania.  I think their statement was that they cannot effectively supervise if he's a thousand miles away or some words to that effect.
>
> Also, this is not the first hearing that I have had with [N.B.R.H.].  Dreams are great.  Everyone has one.  It sounds like you have some lofty ones.  A new start is great.  It's clear to me based on this hearing and the last hearing you are a very intelligent young man and certainly capable of achieving a lot.  I am concerned about a couple of things.
>
> First of all, at this point it doesn't sound like we know if he is approved and is in Alabama [that] he will have health insurance.  That's obviously a first concern.
>
> The Court also notes from the last hearing [N.B.R.H.] is disrespectful.  Disrespectful to this Court in that last hearing and disrespectful to the agency.  This Court also knows a little bit about what it takes to be a military officer. You certainly have the ability but you have some things to learn and perhaps an ROTC is a good place for you.

If I take a look at the Rule, there is more than just meeting of the technical requirements. Under Rule 1635(C)(4) I have to determine whether it is best suited to protect the physical, mental and moral welfare of the child. Based on testimony and based on facts before me, it is not in the best interest of this young man to get a [stipend] without supervision. That is to say that he gets all the benefits of a Resumption of Jurisdiction without any of the burden. There is no stipend without supervision. You cannot be effectively supervised in Alabama; therefore, you have a choice, you either move back to Pennsylvania or you forego the benefits of Resumption of Jurisdiction and I will so order it.

N.T., 1/27/2017, at 42–43.

"It is ... axiomatic that parties may bind themselves by stipulations so long as they do not affect the jurisdiction of the court, and provided that the stipulations are not in contravention of peremptory statutory requirements." Marmara v. Rawle, 399 A.2d 750, 753 (Pa. Super. 1979) (emphasis added). See Mead Johnson & Co. v. Breggar, 189 A.2d 866 (Pa. 1963) (parties could not agree to the issuance of an injunctional order, absent an adjudication that plaintiff's product was in fair and open competition); Foley Brothers, Inc. v. Commonwealth, 163 A.2d 80 (Pa. 1960) (parties may not stipulate more than the legal number of arbitrators).

Here, WCCB's stipulations that N.B.R.H. met the Juvenile Act's definition of "Child," affected the jurisdiction of the court. See 42 Pa.C.S. §§ 6302 ("Child"), 6303(a) ("Scope of chapter", "General rule"), and 6351(j)(1) (requiring child to continue to meet the definition of "Child" pursuant to section 6302). Further, as is evident from the record, WCCB had done no independent verification of the enrollment and employment documents provided by

- 15 -

N.B.R.H., and the trial court was skeptical that N.B.R.H. met the definition of "Child."[5]  Nevertheless, the trial court abided by these stipulations in determining that N.B.R.H. "currently meets the definition of 'Child' as defined by The Juvenile Act at 42 Pa.C.S. § 6302."  Order, dated 1/27/2017, filed 2/1/2017.

The parties in the instant case had no authority and no grounds to stipulate to a jurisdictional requirement, and the trial court erred in accepting the stipulations.  Accordingly, applying the above-cited case law, we are obliged to reverse the court's order and remand this case to the trial court for an evidentiary hearing for the court to determine whether N.B.R.H. meets the Juvenile Act's definition of "Child" in order to request resumption of dependency jurisdiction pursuant to Section 6351(j).

In light of our ruling, we decline to address the merits of N.B.R.H.'s issues on appeal, as entry of a new order or decree may address or render moot these issues and, in the current procedural posture, we would be rendering an advisory opinion on an order or decree not yet entered.  See, generally, Stuckley v. Zoning Hearing Bd., 79 A.3d 510, 519 (Pa. 2013)

_____

[5] See Trial Court Opinion, 3/3/2017, at 2 (unnumbered) (Findings of Fact, Nos. 9 and 11, regarding N.B.R.H.'s enrollment at JSCC).  In its opinion, the trial court made no findings of fact regarding N.B.R.H.'s employment.  However, as already mentioned, the trial court found that N.B.R.H.'s testimony was not credible.  See id. at 3 (unnumbered) (Finding of Fact No. 20).

("Where the issues in a case are moot, any opinion issued would be merely advisory and, therefore, inappropriate.").

Accordingly, we reverse the order of the trial court and remand for further proceedings consistent with this memorandum.

Order reversed.  Case remanded.  Jurisdiction relinquished.

Judge Lazarus joins this memorandum.

Judge Bowes files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  10/10/2017